UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
ELVIN LEBRON,                                        :

                         Petitioner,       :                 02 Civ. 6327 (RPP)

            -against-                       :                 **OPINION AND ORDER**

THOMAS C. SANDERS,                          :

                         Respondent.    :
-----------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

        Petitioner Elvin Lebron signed this habeas corpus petition on November 7, 2001, raising

various claims but primarily charging that his conviction was obtained by a plea of guilty that

was unlawfully induced and not made voluntarily with an understanding the nature of the charge

and the consequences of the plea, by evidence gained pursuant to an unconstitutional search and

seizure, and by ineffective assistance of counsel.  (Pet.)  Initially, Respondent moved to dismiss

the petition on the grounds the proceeding was time barred pursuant to the provisions of the

Anti-Terrorism and Effective Death Penalty Act (the "AEDPA").  On February 25, 2004, this

Court denied Respondent's motion, finding that approximately 20 days remained untolled at the

time of the filing of the petition.  Lebron v. Sanders, No. 02 Civ. 6327, 2004 U.S. Dist. LEXIS

2891 (S.D.N.Y. Feb. 25, 2004).  For the following reasons, the habeas petition is denied on the

merits in its entirety.


**BACKGROUND**

        The Supreme Court of the State of New York, County of New York, conducted a three-

day hearing on Petitioner's motion to suppress physical evidence, statements to law enforcement,

and identification testimony on May 19, 20, and 23, 1994. At the conclusion of the hearing on May 23, 1994, Justice John A. K. Bradley denied the motion but suppressed the first of two statements Petitioner made to police officers and ordered trial to commence the next day. (Resp't Answer Opposing Pet., App., Ex. A.) On May 24, 1994, rather than proceed with trial, Petitioner pled guilty to manslaughter in the first degree, robbery in the first degree, and gun possession in the third degree in satisfaction of all charges in the outstanding indictments. On the same date, Petitioner also pled guilty to a youthful offender violation of probation for an offense committed on August 13, 1993.[1] (Plea Hr'g Tr. at 1-3.)

By a twenty-page letter dated September 12, 1994, Petitioner expressed a desire to withdraw his plea, asserting his innocence and that his attorney from Neighborhood Legal Services improperly pressured him to plead guilty and lied to him. (Resp't Answer Opposing Pet., App., Ex. B.) Accordingly, new counsel was assigned, and, in a motion dated October 3, 1994, Petitioner's new counsel moved to withdraw the plea. (Id., Ex. B.) In a written decision dated December 1, 1994, Justice Bradley denied Petitioner's motion (id., Ex. C). On December 14, 1994, Justice Bradley sentenced Petitioner to concurrent terms of seven and one-third to twenty-two years for manslaughter, eleven to twenty-two years for armed robbery in the first degree, one to three years for gun possession in the third degree, and one to three years for his violation of probation. (Sentencing Hr'g Tr.) Petitioner is currently incarcerated in state prison pursuant to that judgment.

## I. Underlying Facts

On September 12, 1993, on the footbridge between Ward's Island and Manhattan Island,

---

[1] On May 24, 1994, Petitioner's codefendant Robert Rodriguez also pled guilty to murder in the second degree on September 12, 1993, robbery in the first degree on September 20, 1993, and robbery in the second degree on August 24, 1993. (Plea Hr'g Tr. at 16-25.)

two men attempted to rob Terrence Campbell. During the course of the attempted robbery, one of the men shot Campbell once in the head, killing him.

At about 12:40 a.m. on September 20, 1993, on Ward's Island, two men used a gun to rob Fernando Canales of money and subway tokens. In response to a radio call about the robbery, Police Officer John Bianco and his partner drove across the Triborough Bridge to Ward's Island. (Suppression Hr'g Tr. at 12-13.) Bianco saw Petitioner and Robert Rodriguez, who met the description of the robbery suspects, riding bicycles on the Bridge's footpath towards Manhattan. (Id. at 14.) Rodriguez was apprehended on the Bridge, but Petitioner escaped. (Id. at 17-20.)

At approximately 3:00 p.m. on September 22, 1993, Police Officer Terrance McGhee arrested Petitioner for criminal possession of a weapon while riding a bicycle. (Id. at 132). At the time, Petitioner was not a suspect in the murder of Terrence Campbell. (Id. at 137.) When Officer McGhee asked Petitioner during his interview if he knew anything about a man being killed on the footbridge, Petitioner replied that he had witnessed the shooting and gave a statement about what happened. (Id. at 139.) Petitioner, who had claimed he was fifteen years old, was detained at a juvenile facility until it was learned that he was actually eighteen years old, at which point he was processed as an adult. (Id. at 135-36, 144-45.)

On September 29, 1993, the police received an anonymous phone call from a woman who reported that Petitioner and Rodriguez were the persons who killed a man on the footbridge. (Id. at 217-18.) That same day, Officer McGhee assembled a photo array containing Petitioner's photograph based on a description of Rodriguez's unapprehended accomplice and the fact that Petitioner lived in the area and that bicycles were used during the robbery, in addition to the fact that McGhee had arrested Petitioner with a gun on a bicycle. (Id. at 148.) Later on September 29, 1993, Officer McGhee showed Fernando Canales the photo array, and Canales identified

Petitioner's photograph as that of one of the people who had robbed him on Ward's Island. (<u>Id.</u> at 153-55.)

On September 30, 1993, Detective Michael Ulacco showed Officer Bianco the photo array containing Petitioner's photo, and Bianco identified Petitioner as the person on a bicycle whom he had tried to apprehend on the Triborough Bridge footpath on September 20, 1993. (<u>Id.</u> at 29-30, 103.) On November 9, 1993, Officer Bianco identified Petitioner from a line-up as that same person. (<u>Id.</u> at 36-37, 190.)

On October 5, 1993, Vincent Perez and David Tavares told detectives that they had witnessed Petitioner and Rodriguez shoot Terrence Campbell. (<u>Id.</u> at 219-26, 233-36.) That afternoon, Detective Ulacco stopped Petitioner riding his bike on the ramp that leads to the 102nd Street footbridge to inquire about Petitioner's cooperation in the murder investigation, and Petitioner agreed to come to the precinct where he was interviewed. (<u>Id.</u> at 109-10.) After midnight on October 6, 1993, Detective Ulacco placed Petitioner under arrest for the robbery of Fernando Canales and seized Petitioner's bicycle and clothing. (<u>Id.</u> at 110-11.) Later on October 6, 1993, Canales identified Petitioner from a lineup as one of the men who had robbed him. (<u>Id.</u> at 168-69.) On October 7, 1993, Perez and Tavares individually identified Petitioner in a one-on-one show-up as one of the men involved in the attempted robbery and shooting of Terrence Campbell. (<u>Id.</u> at 250-52.)

Petitioner was charged with criminal possession of a weapon in the third degree (Indictment No. 9963/93), and then with murder in the second degree, attempted robbery in the first degree, and attempted robbery in the second degree of Terrence Campbell (Indictment No. 10472/93). Petitioner was also charged with robbery in the first degree and robbery in the second degree of Fernando Canales on September 12, 1993 with Rodriguez (Indictment No.

4

10610/93); armed robbery in the first degree on September 20, 1993 of Fernando Canales with Rodriguez; and criminal possession of a loaded weapon on September 22, 1993, as well as to violation of probation for possession of the weapon on September 22, 1993.

Petitioner moved to suppress the statements he made to the police and the prosecutor, property taken from him after his arrest, and several photo arrays and line-up identifications of him. On May 19, 20 and 23, 1994, Justice Bradley held a hearing on the suppression motions. At the conclusion of the hearing, Justice Bradley granted Petitioner's motion to suppress, or preclude for lack of notice, Petitioner's statements to the police and prosecutors, but denied the remainder of his motions. (Resp't Answer Opposing Pet., App., Ex. A at 12-13.)

## II. Direct Appeal and Post-Conviction Proceedings

Subsequent to Petitioner's conviction, his appellate counsel James Montgomery filed a direct appeal to the Appellate Division, First Department, on or about May 1996, asserting that (1) Petitioner's arrest on October 5, 1993 was not based on probable cause; (2) that according to New York Criminal Procedure Law, the trial court was required to hold a hearing before denying Petitioner's motion to withdraw his plea; (3) that his plea to manslaughter was invalid as that crime did not constitute a lesser offense of felony murder under New York law; and (4) that his waiver of his right to raise that claim on appeal was invalid. (Resp't Answer Opposing Pet., App., Ex. D.)

On April 8, 1997, the Appellate Division, First Department, unanimously affirmed Petitioner's conviction and sentence and denied certiorari. In its opinion, the court held that Justice Bradley properly denied Petitioner's request to withdraw his guilty plea and properly denied Petitioner's motion to suppress evidence, and had properly found that the arresting officer had probable cause to arrest the Petitioner because the officer was aware, at the time of arrest,

that one of the robbery victims had identified Petitioner's photo.  (Resp't Answer Opposing Pet., App., Ex. F.)  The First Department also upheld the legality of Petitioner's plea of guilty to manslaughter in satisfaction of the felony murder count involving the same victim, citing New York Criminal Procedure Law § 226.10(4).  (Id.)

On April 16, 1997, Petitioner's appellate counsel sought leave to appeal the decision of the First Department to the New York Court of Appeals.  (Resp't Answer Opposing Pet., App., Ex. G.)  On July 16, 1997, Petitioner's application was denied upon reconsideration by Associate Judge Ciparik.  (Id.)  Certiorari was denied on December 15, 1997 by the Supreme Court of the United States.  Lebron v. New York, 522 U.S. 1032 (1997).

On April 29, 1999, Petitioner moved pro se pursuant to New York Criminal Procedure Law §§ 440.10 and 440.20 to vacate his May 24, 1998 judgment of conviction.  (Resp't Answer Opposing Pet., App., Ex. H.)  The motion to vacate contended that Justice Bradley, by imposing the mandatory monetary surcharge, violated the plea agreement; that the ballistics report submitted to the grand jury had been improperly authenticated; that the people had introduced third-party hearsay before the grand jury; that the evidence before the grand jury was insufficient to support his indictment; that his pre-sentence report was not available the day before he was sentenced; and that he did not receive sufficient notice that a member of the victim's family would speak at the sentence hearing.  (Id., Ex. H.)

Justice Bradley denied Petitioner's motions on February 10, 1999.  (Id., Ex. H.)  His opinion pointed out that Petitioner did not make his sentencing claims at the time of sentencing and that, in any event, he had not been prejudiced since he received the sentence he had been promised at the time of his plea.  As for the grand jury procedural claims, Justice Bradley held that, since such claims could have been raised on direct appeal, denial was required pursuant to

New York Criminal Procedure Law § 440.10(2).  Furthermore, he held that the issues raised by Petitioner did not constitute such an egregious violation of basic rights as to render the proceedings a nullity.  People v. Gerber, 182 A.D.2d 252 (N.Y. App. Div. 1992), leave to appeal denied, 80 N.Y.2d 1026 (holding that guilty plea operated to waive his challenges to the evidence presented to the grand jury); People v. Ogbudinkpa, 242 A.D.2d 451 (N.Y. App. Div. 1997); People v. Morales, 239 A.D.2d 254 (N.Y. App. Div. 1997).  On July 1, 1999, Judge Lerner of the First Department denied Petitioner's application for leave to appeal Justice Bradley's decision.  (Resp't Answer Opposing Pet., App., Ex. H.)  On December 30, 1999, Judge Howard A. Levine of the Court of Appeals denied Petitioner's leave to appeal.  (Id.)

On June 17, 1999, Petitioner sought a writ of error coram nobis from the First Department, raising a claim of ineffective assistance of appellate counsel.  (Resp't Answer Opposing Pet., App., Ex. I.)  His petition was denied on January 6, 2000, by the First Department.  (Id., Ex. J.)

On March 8, 2000, Petitioner filed a motion captioned "Leave to Renew Appeals" in which he restated the arguments he made in his § 440.10 and § 440.20 motions of September 1998, and his 1999 application for a writ of error coram nobis.  On August 10, 2000, the First Department denied Petitioner's application for a certificate to appeal.  (Id., Ex. L.)  On September 20, 2000, the Court of Appeals certified that Petitioner's application for a certificate to appeal was dismissed because the order is not appealable.  (Id.)

On August 28, 2000, Petitioner filed a motion before the First Department again seeking reargument of his writ of error coram nobis.  (Id., Ex. M.)  On May 8, 2001, the First Department denied Petitioner's motion.  And again, on June 8, 2001, the Court of Appeals certified that Petitioner's application for a certificate to appeal was dismissed because the order is not

appealable.  (Id.)

By petition signed November 7, 2001, Petitioner sought a writ of habeas corpus from this Court.  Petitioner raises the following four grounds for relief, which were previously reviewed on direct appeal:  (1) the trial judge erred in finding that the police had probable cause to arrest him (Pet. at 48); (2) his pleading guilty to manslaughter was invalid because manslaughter is not a lesser included offense of felony murder under New York's Criminal Procedure Law (id. at 72); (3) the trial court should have granted him a hearing to review his contention that his attorneys coerced him into pleading guilty (id. at 77); and (4) his waiver in particular and his guilty plea in general were not knowing and voluntary (id. at 70).

Petitioner also raises six claims that he previously raised in his September 1998 motions to set aside his sentence and to vacate judgment:  (5) he should have been allowed to withdraw his plea because the trial judge broke the plea agreement by imposing the mandatory surcharge and victims fees which were not part of his plea agreement; (6) his pre-sentence report was not made available to him prior to his sentencing so he could correct inaccuracies; (7) he did not receive notice that a member of the victim's family would make a statement at his sentencing; (8) a ballistics report was improperly admitted in the grand jury proceedings; (9) police testimony was improperly used to bolster an identification witness's testimony before the grand jury; and (10) evidence before the grand jury was insufficient to support Petitioner's indictment on the robbery charges, since there was no evidence presented that the gun used in the robbery, which was never recovered, was operable.

In addition, Petitioner raises several new evidentiary and procedural issues:  (11) the prosecutor failed to present exculpatory material to the grand jury; (12) the disclosure of Rosario material on the eve of trial constituted prosecutorial misconduct (id. at 62); (13) emergency room

physicians were responsible for the death of Terrence Campbell (id. at 54-57); (14) the trial court abused its discretion in joining Petitioner's trial with that of Rodriguez (id. at 74); (15) the trial court erred in its pretrial <u>Sandoval</u> decision (id. at 51); (16) the prosecutor never responded to his request to be subjected to brain fingerprinting, polygraph and DNA testing.  Petitioner also alleges that (17) Justice Bradley was biased against him and that (18) his trial counsel rendered ineffective assistance.  Finally, Petitioner reasserts his claim of ineffective assistance of appellate counsel to show cause for his procedural default of claims he failed to exhaust in the state courts.

Petitioner filed another habeas corpus petition signed February 1, 2007, which was assigned to Chief Judge Wood under docket number 07 Civ. 4704.  In that petition, Petitioner raised due process and equal protection challenges to his conviction and sentence.  He asserted that he was owed "jail time" but did not provide a sufficient basis for the court to review this claim.  By order dated June 4, 2007, Chief Judge Wood directed Petitioner to submit an amended petition to the Pro Se Office within sixty days of the order.  In his amended petition signed August 1, 2007, Petitioner clarified that he was challenging a December 14, 1994 New York County conviction.  On September 27, 2007, Chief Judge Wood ordered Petitioner's amended petition to be filed in the action pending before this Court and dismissed the 07 Civ. 4704 action without prejudice to this pending action.

**DISCUSSION**

**I.  The Applicable Law**

**A.  Standards of Review under the AEDPA**

A petitioner in custody pursuant to a state court judgment is entitled to habeas relief only if he can show that her detention violates the U.S. Constitution or the laws or treaties of the

United States.  28 U.S.C. § 2254(a) (2000).  Before bringing his petition to federal court, the

petitioner must have exhausted his state court remedies.  Id. § 2254(b)(1)(A).  If a petitioner's

claims were previously decided on the merits, habeas relief may be granted only if the state

court's decision was "contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States," or was "based on an

unreasonable determination of the facts in light of the evidence presented in the State court

proceeding."  Id. § 2254(d).  If all of the claims in a petition are incapable of justifying relief,

"[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the

failure of the applicant to exhaust the remedies available in the courts of the State" with respect

to one or more of the claims.  Id. § 2254(b)(2); see Granbery v. Greer, 481 U.S. 129, 135 (1987);

Pratt v. Greiner, 306 F.3d 1190, 1196-97 (2d Cir. 2002).

### B.  Exhaustion and Procedural Default

Under the AEDPA, federal habeas corpus petitioners are required to exhaust their claims

in the state courts before seeking relief from the federal courts.  28 U.S.C. § 2254(b)(1); Picard v.

Connor, 404 U.S. 270, 275-76 (1971); see also Vasquez v. Hillery, 474 U.S. 254, 257 (1986).

"State remedies are deemed exhausted when a petitioner has: (i) presented the federal

constitutional claim asserted in the petition to the highest state court (after preserving it as

required by state law in lower courts) and (ii) informed that court (and lower courts) about both

the factual and legal bases for the federal claim."  Ramirez v. Attorney General, 280 F.3d 87, 94

(2d Cir. 2001); see also Grey v. Hoke, 933 F.2d 117, 119 (2d Cir. 1991).  If denied relief after

bringing his claim in the appropriate state court, the petitioner must take advantage of all

available mechanisms to secure appellate review of the denial of that claim.  See 28 U.S.C. §

2254(c) (providing that "(an) applicant shall not be deemed to have exhausted the remedies

available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented"); Dean v. Smith, 753 F.2d 239 (2d Cir. 1985) (stating that a petitioner must also have used "all available mechanisms to secure review" of the federal claim in state court).

If a petitioner failed to meet a state procedural requirement when he presented a federal constitutional claim to the state courts, the petitioner may be barred from receiving federal habeas corpus relief on the claim under the "adequate and independent state procedural grounds" doctrine. Harris v. Reed, 489 U.S. 255, 262 (1989) (stating that the "adequate and independent state ground doctrine applies on federal habeas"). This doctrine prohibits a federal court from reviewing a question of federal law decided by a state court if the decision of that court rests on a state law ground, either substantive or procedural, that is independent of the federal question and adequate to support the judgment. See Coleman v. Thompson, 501 U.S. 722, 728-29 (1991). This proscription applies even where a state court expressly relies on a procedural default as an independent and adequate state-law ground but nevertheless has ruled in the alternative on the merits of the federal claim. See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).

A federal habeas court should find a procedural default, rather than an exhaustion problem, when a petitioner fails to exhaust state remedies, and as a result, those remedies are clearly no longer available under state law. See O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999) (holding that petitioner "has procedurally defaulted his claims" where he failed to exhaust a state remedy that is now time-barred); Gray v. Netherland, 518 U.S. 152, 162 (1996); see also Randy Hertz & James S. Liebman, 2 Federal Habeas Corpus Practice and Procedure § 26.1, at 1255 n.25 (5th ed. 2001). "[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion

11

requirement would now find the claims procedurally barred" under state law, federal habeas courts also must deem the claim procedurally defaulted. <u>Coleman</u>, 501 U.S. at 735 n.1. Such procedurally defaulted federal claims are "deemed exhausted," <u>McKethan v. Mantello</u>, 292 F.3d 119, 122 (2d Cir. 2002); <u>Ramirez</u>, 280 F.3d at 94; <u>Grey</u>, 933 F.2d at 120, because the petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)," <u>Grey</u>, 933 F.2d at 120.

A petitioner is barred from raising a procedurally defaulted claim as a basis for habeas relief unless he can show (1) cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) that failure to consider the federal claim will result in a "fundamental miscarriage of justice," which requires the petitioner to make a factual showing that he is "actually innocent" of the crime for which he was convicted. <u>Bousley v. United States</u>, 523 U.S. 614, 622 (1998), <u>quoted in</u> <u>DiSimone v. Phillips</u>, 461 F.3d 181, 190 (2d Cir. 2006); <u>see also</u> <u>Coleman</u>, 501 U.S. at 750; <u>Harris</u>, 489 U.S. at 262.

## II. Analysis of Petitioner's Claims for Relief

In reviewing the instant petition, the Court is mindful that Petitioner is proceeding *pro se*. For this reason, Petitioner's submissions will be "liberally construed in his favor," <u>Simmons v. Abruzzo</u>, 49 F.3d 83, 87 (2d Cir. 1995) (citing <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972)), and read "to raise the strongest arguments that they suggest," <u>Graham v. Henderson</u>, 89 F.3d 75, 79 (2d Cir. 1996) (citation omitted).  In his habeas petition, Petitioner raises both claims that were reviewed on direct appeal in state court and claims for which he failed to exhaust state remedies.

### A. Petitioner's Claims Raised on Direct Appeal

Petitioner brings four claims that were previously reviewed on direct appeal:  (1) the trial judge erred in finding that the police had probable cause to arrest him (Pet. at 48); (2)

Petitioner's plea of guilty to manslaughter was invalid because manslaughter is not a lesser included offense of felony murder under New York's Criminal Procedure Law (id. at 72); (3) the trial court should have granted him a hearing to review his contention that his attorneys coerced him into pleading guilty (id. at 77); and (4) his waiver in particular and his guilty plea in general were not knowing and voluntary (id. at 70).

Petitioner satisfied the AEDPA's exhaustion requirement with respect to each of these four claims:[2] he raised each of them on direct appeal (Resp't Answer Opposing Pet., App., Ex. D), and they were denied with opinion by the First Department (id., Ex. F); he applied for leave to appeal the First Department's decision to the highest court of New York and stated the four claims in his letter (id., Ex. G); and finally he raised the same grounds for relief in his motions under section 440 to set aside judgment and vacate his sentence. As explained below, however, the first three claims are not cognizable on habeas review and are nonetheless without merit. The fourth claim, the single exhausted claim that is reviewable, was properly resolved against Petitioner in state court.

### 1. Probable Cause for Petitioner's Arrest

On direct appeal, Petitioner claimed that his detention by Detective Ulacco on October 5, 1993 amounted to a de facto arrest and was done without probable cause because Ulacco could not have known that Petitioner had already been identified as one of the two men who robbed Canales on September 20, 1993. (Resp't Answer Opposing Pet., App., Ex. D at 8-10.) Petitioner claimed that because his arrest was unlawful, the seizure of his bicycle and clothing shortly after his arrest and the line-up identification by Canales on October 6 should have been suppressed under the Fourth Amendment. (Id.) Petitioner now renews this Fourth Amendment claim,

---

[2] As explained more fully below, Petitioner did not exhaust the state remedies with respect to his fourth claim on all the factual grounds raised in his habeas petition.

arguing that his arrest was unlawful because Officer Ulacco did not have an arrest warrant.  (Pet. at 48.)

In Stone v. Powell, 428 U.S. 465 (1976), the Supreme Court held that federal habeas corpus relief is not available to redress violations of the Fourth Amendment exclusionary rule if the petitioner was afforded a "full and fair opportunity to litigate" the Fourth Amendment issue in the state courts.  The Second Circuit has since concluded that

> review of Fourth Amendment claims in habeas petitions would be undertaken in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.

Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992) (citing Gates v. Henderson, 568 F.2d 830 (2d Cir. 1977)).

Petitioner's Fourth Amendment claim is not cognizable on habeas review because New York provided him with a full and fair opportunity to redress possible Fourth Amendment claims pursuant to New York Criminal Procedure Law sections 710.10 et seq.  Specifically, Petitioner was afforded the opportunity to move to suppress any improperly obtained physical evidence or improper identification testimony that he reasonably believed would be offered against him in a criminal action.  N.Y. Crim. Proc. Law § 710.20 (Consol. 2007).  Petitioner in fact availed himself of these procedures by filing a pretrial motion challenging probable cause for his arrest and seeking the suppression of statements he made to the police, property seized from him following his arrest, and the photo-array and line-up identifications of him.  The federal courts have approved New York's procedure for litigating Fourth Amendment claims embodied in sections 710.10 et seq. as being facially adequate.  Gates, 568 F.2d at 837 & n.4; Shaw v. Scully,

654 F. Supp. 859, 864 (S.D.N.Y. 1987). Habeas review of his Fourth Amendment claims is therefore unavailable unless Petitioner can show that he was in fact precluded from using the procedures because of "an unconscionable breakdown in the review process." Shaw, 654 F. Supp. at 864; accord Holmes v. Scully, 706 F. Supp. 195, 201 (E.D.N.Y. 1989).

In Petitioner's case, there was no "unconscionable breakdown" in the process provided by the New York Criminal Procedure Law that prevented Petitioner from having a full and fair opportunity to litigate his Fourth Amendment claims. An "unconscionable breakdown" of the procedure is proven where the petitioner demonstrates that "no state court . . . conducted a 'reasoned method of inquiry into relevant questions of fact and law,' or any inquiry at all" into the Fourth Amendment claim. Shaw, 654 F. Supp. at 864 (quoting Cruz v. Alexander, 477 F. Supp. 516, 523 (S.D.N.Y. 1979) (finding such a breakdown when, through a series of mischances, neither the New York Supreme Court at trial nor the New York Court of Appeals on review ever addressed the merits of the Fourth Amendment claims petitioner had tried to assert throughout)). In Petitioner's case, the state trial court held a three-day suppression hearing on Petitioner's suppression motion during which Detective Ulacco testified and was subject to cross-examination by Petitioner's trial counsel. Ulacco stated under oath that by September 29, 1993, when he showed Officer Bianco the photo array, he knew that Fernando Canales had previously identified Petitioner as the person who, with Robert Rodriguez, robbed him on September 20, 1993. (Suppression Hr'g Tr. at 99, 109.) In a written decision dated December 1, 1994, Justice Bradley credited Officer Ulacco's testimony in his findings of fact (Resp't Answer Opposing Pet., App., Ex. A at 10), and concluded that there was probable cause to arrest Petitioner and that each of the identifications were proper and admissible (id. at 12).

Petitioner sought and received further review of his Fourth Amendment claim on direct

appeal to the First Department in which he argued that "the hearing court should not have credited" Ulacco's testimony.  (Resp't Answer Opposing Pet., App., Ex. D at 8.)  In an opinion dated April 8, 1997, the First Department agreed with the hearing court that Officer Ulacco had probable cause to arrest "since he was aware at the time that one of the robbery victims had identified defendant's photo."  (Id., Ex. F at 1.)  Thereafter Petitioner raised the same issue in his letter in application for leave to appeal to the New York Court of Appeals (id., Ex. G), and his application was denied.  People v. Lebron, 685 N.E.2d 219 (N.Y. 1997).  On these facts, where Petitioner has availed himself of the procedure provided by the New York Criminal Procedure Law and the state appellate process, it is clear that he had a full and fair opportunity to litigate his Fourth Amendment claim.

Even if Petitioner's claim were cognizable on habeas review, it would fail.  Under § 2254(e)(1) of the AEDPA, this Court must presume the correctness of Justice Bradley's factual determinations as to whether Officer Ulacco knew Petitioner had been previously identified as one of the two men who robbed Canales and as to whether Officer Ulacco was credible as a witness, unless such determinations are unreasonable in light of the evidence presented to the state court.  28 U.S.C. § 2254(e)(1), (d)(2); Marshall v. Lonberger, 459 U.S. 422, 432, 434 (1983) (stating that "federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them").  Justice Bradley's determination is indeed reasonable in view of the record.  Officer Ulacco had to have known that Petitioner had been identified as a suspect in Canales's robbery because Ulacco was the officer who showed Officer Bianco the photo array containing Petitioner's photo on September 30, 1993.  (Id. at 29-30, 103.)  As there was probable cause for Petitioner's arrest, an arrest warrant was not required.

### 2. Petitioner's plea to manslaughter under a felony murder charge

On direct appeal, Petitioner argued that his plea of guilty to manslaughter was illegal under a strict reading of New York Criminal Procedure Law § 220.10 because he was indicted on a felony murder charge, and New York law does not consider manslaughter a lesser included offense of felony murder. (Resp't Answer Opposing Pet., App., Ex. D at 12-13.) Petitioner now renews this claim in his habeas petition. (Pet. at 72-73.) Under the AEDPA, however, a federal court is limited to deciding whether a state prisoner is held in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). As Petitioner's claim challenges the application of a state law of criminal procedure, it cannot form a basis for habeas relief. See Estelle v. McGuire, 502 U.S. 62, 67 (1991).

In any event, Petitioner's challenge to § 220.10 has been considered and rejected by the highest court of New York. In People v. Adams, 444 N.E.2d 33 (N.Y. Ct. App. 1982), the New York Court of Appeals approved of a plea to manslaughter in the first degree in satisfaction of a felony murder count involving the same victim following the defendant's conviction for the underlying felony, even though the lesser crime was technically inconsistent with the crime charged. Applying this controlling precedent, the First Department upheld Petitioner's guilty plea to manslaughter on the same ground. (Resp't Answer Opposing Pet., App., Ex. F at 1.) Thus, even if cognizable on habeas review, Petitioner's claim would be futile.

### 3. Failure to hold an evidentiary hearing on Petitioner's plea withdrawal motion

On direct appeal, Petitioner argued that it was an abuse of discretion for the trial court not to conduct an evidentiary hearing on Petitioner's motion to vacate his guilty pleas in view of the seriousness of charges and Petitioner's protestations of innocence. (Resp't Answer Opposing

Pet., App., Ex. D at 13-14.) Petitioner reasserts this claim in his habeas petition. This claim, however, cannot serve as a basis for habeas relief because there is no federal constitutional right to an evidentiary hearing on a motion to withdraw a guilty plea. See United States v. Maher, 108 F.3d 1513 (2d Cir. 1997); United States v. Gonzalez, 970 F.2d 1095, 1100 (2d Cir. 1992).

In any event, the trial court did not abuse its discretion in denying Petitioner's motion without a hearing. The Second Circuit has held that to justify an evidentiary hearing on a motion to withdraw a guilty plea, the defendant must present "some significant questions concerning the voluntariness or general validity of the plea." Gonzalez, 970 F.2d at 1100. The trial court need not hold such a hearing if the movant's allegations "merely contradict" statements made under oath at his plea allocution, id. at 1101, which carry a strong presumption of verity, Blackledge v. Allison, 431 U.S. 63, 74 (1977). In this case, Petitioner's plea was voluntary and valid, as is more fully discussed below.

### 4.   Knowing and voluntary nature of Petitioner's guilty plea

On direct appeal, Petitioner made two challenges to the validity of his guilty plea. He argued that during his allocution he did not knowingly, intelligently, and voluntarily waive his right to appeal whether his manslaughter conviction was a lesser included offense of felony murder under New York state law. (Resp't Answer Opposing Pet., App., Ex. D at 10-12.) He also argued that he was entitled to a hearing on his motion to withdraw his plea in view of his allegations that his attorney coerced him into accepting the plea. (Id. at 14.) The First Department upheld the trial court's decision to deny Petitioner's request to withdraw his plea after determining that "[i]t is clear from the record that [Petitioner's] plea was voluntary, knowing and intelligent, and that he was given a full opportunity to advance his claim." (Id., Ex. F at 1 (citations omitted).) Petitioner then unsuccessfully sought leave to appeal the First

Department's decision to the New York Court of Appeals.  (Id., Ex. G.)

In the instant petition, Petitioner claims that he "never pled guilty knowingly, intelligently, voluntarily nor otherwise, and did not waive his right to go to trial, be represented by an attorney" or any other rights.  (Pet. at 70.)  Petitioner raises several grounds for his claim: (i) his plea was coerced by his lawyers, (ii) his "answers of yes or no" during his plea allocution were inadequate factual bases for his guilty pleas to criminal possession of a weapon, felony murder, and robbery (id. at 70), (iii) he had not been sworn in when the court questioned him about whether he was freely and voluntarily pleading guilty (id. at 70), and (iv) the court failed to take into consideration Petitioner's "loss of composure prior, during, and after pleading guilty as [he] cried and sniffled non-stop" (id. at 73).

Petitioner fully exhausted his claims that his guilty plea was not voluntary and intelligent and that his lawyers coerced his plea.  Petitioner presented these claims to the highest court of New York, and they were resolved against him by the First Department in denying his motion to withdraw his plea.  See Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981) (stating that "where the petitioner has appealed his conviction to the highest state court, and throughout the course thereof has fairly presented the claim that is now the gravamen of his federal habeas corpus petition, he has satisfied the exhaustion requirement").

Petitioner, however, failed to raise the remaining grounds for challenging the validity of his plea on direct appeal—i.e., that his yes or no answers are insufficient factual bases for his plea, that he was not sworn in during the first part of his plea, and that the court did not take into consideration his emotional state.  These grounds are procedurally barred under state law for not having been raised in a timely fashion.  Because there is no longer a state procedural mechanism by which Petitioner can seek a state remedy on these grounds, they are deemed exhausted and

procedurally defaulted on habeas review.  See McKethan v. Mantello, 292 F.3d 119, 122 (2d Cir.

2002) (citing Ramirez, 280 F.3d at 94)); see also Grey v. Hoke, 933 F.2d 117, 120 (2d Cir.

1991).  Even if they were not defaulted, however, they would fail on the merits.

Since the New York state courts already passed on the merits of Petitioner's claim

challenging the validity of his guilty plea, the Court cannot grant a writ of habeas corpus unless

the state adjudication of the claim "(1) resulted in a decision that was contrary to or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States."  28 U.S.C. § 2254(d)(1).  Moreover, determinations of the factual

issues involved in the state court's adjudication of this claim are entitled a presumption of

correctness under the AEDPA.  Id. § 2254(e)(1) (stating that in a habeas proceeding instituted by

state prisoner's application, "a determination of a factual issue made by a State court shall be

presumed to be correct.  The applicant shall have the burden of rebutting the presumption of

correctness by clear and convincing evidence").  An exception to the presumption of correctness

applies where the state court adjudication "resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court

proceeding."  Id. § 2254(d)(2).

The Supreme Court has explained that while "the governing standard as to whether a plea

of guilty is voluntary for purposes of the Federal Constitution is a question of federal law" and

not subject to the deference afforded by § 2254(e)(1), the historical facts relating to the guilty

plea and the trial court's inferences regarding those historical facts are questions of "fact" that

enjoy the presumption of correctness.  Marshall v. Lonberger, 459 U.S. 422, 431-32 (1983).  In

Lonberger, the federal habeas court was "bound to respect" the following state court factual

conclusions:  "the contents of the [state] court records, the finding of the [state] trial court that

[the petitioner] was 'an intelligent individual, well experienced in the criminal processes and well represented at all stages of the proceedings by competent and capable counsel,' . . . and the inferences fairly deducible from these facts." Id. at 435. In this case, it is clear that the state courts' decision to deny Petitioner's motion to vacate his plea did not involve an unreasonable application of clearly established Supreme Court law or an unreasonable determination of the facts in light of the evidence.

The clearly established Supreme Court law that applies to Petitioner's claim provides that a guilty plea is constitutionally acceptable under the Due Process Clause of the Fourteenth Amendment if it "represents voluntary and intelligent choice among the alternative courses open to the defendant." Hill v. Lockhart, 474 U.S. 52, 56 (1985); North Carolina v. Alford, 400 U.S. 25, 31 (1970). "The voluntariness of [a] plea can be determined only by considering all of the relevant circumstances surrounding it," including "the possibility of a heavier sentence following a guilty verdict after a trial." Brady v. United States, 397 U.S. 742, 749 (1970). A guilty plea, which works as a waiver of numerous constitutional rights, cannot be truly voluntary if the defendant "has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." Henderson v. Morgan, 426 U.S. 637, 645 n.13 (1976).

Under 28 U.S.C. § 2254(e)(1) and Lonberger, this Court presumes the correctness of Justice Bradley's findings that "Lebron's attorney Jones was extremely diligent and well prepared;" that "under Mr. Jones' representation Lebron did not leap at the first possible plea bargain[, but] [r]ather Jones advised that such offers were unacceptable and that he was prepared to proceed;" and that Lebron is a "highly intelligent and articulate" individual. (Resp't Answer Opposing Pet., App., Ex. C, Decision dated 12/1/96, at 1-2.) Nothing in the record gives this Court reason to believe Justice Bradley made an unreasonable determination of these facts.

21

The transcript of the plea allocution, which is entitled to deference under § 2254(e)(1), see Lonberger, 459 U.S. at 435-36, shows that Petitioner answered affirmatively that he was pleading guilty to felonies and relinquishing specific constitutional rights, including a trial at which he would be represented by an attorney, confrontation and cross-examination of witnesses against him, testifying or remaining silent, presenting witnesses on his behalf, and having a case decided by a jury. (Plea Hr'g Tr. at 4-5.) Petitioner also affirmatively answered that on September 12, 1993, he attempted to rob Terrence Campbell with Rodriguez (id. at 7-8), who had a gun and shot Campbell who later died while they were attempting to rob him (id. at 8); that on September 20, 1993, he forcibly stole property from Fernando Canales with Rodriguez (id. at 9) and pointed a gun in his possession at Canales (id. at 11); that on September 22, 1993, he possessed a loaded .25 caliber Barretta somewhere other than his home or place of business (id. at 10); and that he violated his probation by possessing such firearm (id. at 11). Finally, with respect to Petitioner's claim of attorney coercion, Petitioner acknowledged during his allocution that he had been given sufficient time to consult with his attorneys prior to entering his new plea (id. at 3), that he was satisfied with the job his lawyers did (id. at 4), that no promises, other than the promised sentence, had been made to him (id. at 12), that no one "forced [him] or threatened [him] in any way" to get him to plead guilty (id. at 5), and that he was choosing to do so "voluntarily of [his] own free will" (id. at 6).

A reasonable application of the standard of voluntariness, as articulated by clearly established Supreme Court, to the factual determinations arising from the state-court proceedings leads to the conclusion that Petitioner's plea was voluntary. Under Supreme Court law, Petitioner "must be presumed to have been informed, either by his lawyers or at one of the presentencing proceedings, of the charges on which he was indicted." Lonberger, 459 U.S. at

437 (relying on <u>Henderson v. Morgan</u>, 426 U.S. 637 (1967)).  A person of Petitioner's intelligence, and with the diligent assistance of his competent attorney, would have understood from the statements made at the plea hearing that the presiding judge was inquiring whether he was pleading guilty to the four charges against him and waiving the specific constitutional rights that were made known to him.

Another important circumstance to consider, and which the state court considered, is that Petitioner received an advantageous plea bargain in view of the prison term he was facing. <u>Brady</u>, 397 U.S. at 749 (stating that when determining whether a plea was voluntary, courts should consider "the possibility of a heavier sentence following a guilty verdict after a trial"). Petitioner faced possible consecutive prison terms amounting to a sentence of 45 years to life in prison, and the evidence of his guilt was overwhelming, including testimony of several eye witnesses.  Justice Bradley observed that Petitioner's attorney "took appropriate action to posture the case as favorably for trial as possible."  (Resp't Answer Opposing Pet., App., Ex. C.)  After months of negotiations, Petitioner ultimately accepted a plea bargain that exposed him to sentences to run concurrently for a single sentence of 11 to 22 years.  (<u>See</u> Plea Hr'g Tr. at 12.) Petitioner was sentenced to concurrent sentences with a minimum of 11 years imprisonment. These circumstances further support the conclusion that Petitioner's plea was a "voluntary and intelligent choice among the alternative courses open to [Petitioner]."  <u>Alford</u>, 400 U.S. at 31. Accordingly, Petitioner's claim that his plea was not voluntary and intelligent and was instead the result of attorney coercion must fail.

Finally, there is no merit to Petitioner's defaulted claim that his guilty plea is invalid because he was not sworn in immediately during his allocution and because his "yes" and "no" answers provided an insufficient factual basis for his plea.  Although the trial judge initiated

Petitioner's allocution before swearing him in (id. at 1-6), it was quickly brought to the attention of the court, and Petitioner was sworn in (id. at 6), at which point the allocution proceeded. Petitioner's affirmative answers to questions during his allocution were sufficient: Petitioner allocuted to each of the crimes charged against him and acknowledged that he committed each one. (Id. at 6-11.) Petitioner's challenge to the validity of his guilty plea is denied in its entirety.

### B. Petitioner's Procedural Default of Additional Claims

In addition the claims that were adjudicated on direct appeal, Petitioner brings a host of claims, some of which he asserted in his state post-conviction motions and some of which are entirely new. The previously asserted claims are the six claims he raised in his September 1998 motions to set aside sentence pursuant New York Criminal Procedure Law § 440.20 and to vacate judgment pursuant to § 440.10. The new claims include several evidentiary and procedural challenges, a due process claim, and an allegation of judicial bias, none of which he raised at any point in the state courts.

With respect to the six claims asserted in his § 440.10 and § 440.20 motions, Petitioner is barred from receiving habeas relief based on these claims because they are procedurally defaulted under the "adequate and independent state procedural grounds" doctrine. See Coleman v. Thompson, 501 U.S. 722, 728-29 (1991). A petitioner's unjustifiable failure to raise a constitutional claim on direct appeal despite a sufficient record is a procedural default under New York Criminal Procedure Law § 440.10(2)(c), and therefore constitutes an independent and adequate state ground for the state court's rejection of the petitioner's claim. Sweet v. Bennett, 353 F.3d 135, 139-40 (2d Cir. 2003). To preclude federal review under the independent and adequate state ground doctrine, "the last state court to render judgment must 'clearly and expressly state [] that its judgment rested on a state procedural bar.'" Jones v. Vacco, 126 F.3d

408, 415 (2d Cir. 1997) (quoting <u>Glenn v. Bartlett</u>, 98 F.3d 721, 724 (2d Cir. 1996)).  In

Petitioner's case, the state court denied his motions to set aside his convictions and sentence

unequivocally on this state procedural bar:  "Pursuant to C.P.L. 440.10(2)(c), defendant's motion

is denied because he could have raised all of these issues on appeal."  (Resp't Answer Opposing

Pet., App., Ex. H.)  This clear reliance on a state procedural bar generally precludes habeas

review of these claims.[3]

With respect to Petitioner's new claims, they are deemed exhausted because it is clear

that a state court would now hold them procedurally barred.  <u>Harris</u>, 489 U.S. at 263 n.9.  If

Petitioner were to raise these claims in a § 440.10 motion, the state court would be required to

deny the motion under § 440.10(2)(c) because Petitioner failed to raise these claims on direct

appeal.[4]  Thus Petitioner's new claims are considered procedurally defaulted on habeas review.

<u>See</u> <u>Coleman</u>, 501 U.S. at 735 n.1.

Petitioner's state post-conviction and new claims are barred from receiving habeas relief,

unless he shows cause and prejudice or actual innocence to excuse his procedural default.  <u>See</u>

<u>Bousley v. United States</u>, 523 U.S. 614, 622 (1998).  Under some circumstances, counsel's

ineffectiveness in failing properly to preserve claims for review in state court can constitute

"cause" to excuse procedural default of those claims.  <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451

(2000) (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 488-89 (1986)).  Among the claims in his

petition, Petitioner brings a claim of ineffective assistance of appellate counsel, but does not

expressly raise any other cause for default.  This Court will consider whether Petitioner's claim

---

[3] This ground is no less independent and adequate because the state court also stated alternative grounds for denying Petitioner's motion.  Federal habeas review of the federal issue is curtailed "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision."  <u>Harris v. Reed</u>, 489 U.S. 255, 264 (1989).
[4] Petitioner did raise some of these claims in his writ of error coram nobis.  Raising these issues in a coram nobis petition when they could have been raised on direct appeal, however, does not satisfy the exhaustion requirement. <u>Jones v. Senkowski</u>, 42 Fed. Appx. 485, 487 (2d Cir. 2002).

of ineffective assistance of appellate counsel serves as cause excusing Petitioner's procedural default.

The doctrines of exhaustion and procedural default apply to ineffective assistance of counsel claims raised as cause for procedural default. The Supreme Court has held that the exhaustion doctrine "generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for procedural default." Carrier, 477 U.S. at 489. In addition, "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted" if it is not presented in the manner that state law requires. Edwards, 529 U.S. at 453.

In raising his ineffective assistance of appellate counsel claim, Petitioner successfully exhausted the available state remedies. In New York, coram nobis is the appropriate state remedy for ineffective assistance of appellate counsel. Aparicio v. Artuz, 269 F.3d 78, 87 n.1 (2d Cir. 2001) (citing People v. Bachert, 509 N.E.2d 318 (1987)). On June 17, 1999, Petitioner sought a writ of error coram nobis from the First Department and presented the legal and factual grounds for his ineffective assistance of appellate counsel claim. (Resp't Answer Opposing Pet., App., Ex. I, ¶¶ 64-69.) By summary order dated January 6, 2000, the First Department denied Petitioner's petition in its entirety. (Id., Ex. J.) On August 31, 2000, Petitioner moved for reargument of his writ of error coram nobis on the ground that he was not given opportunity to reply. (Id., Ex. M.) By summary order dated May 8, 2001, the First Department denied Petitioner's motion. (Id.) Petitioner thereafter applied to the New York Court of Appeals for a certificate to appeal the First Department's order denying his motion for reargument, and his application was denied because the order was not appealable under New York Criminal Procedure Law § 450.90(1). (Id.) At no point was Petitioner's claim of ineffective assistance of

26

appellate counsel denied by a state court as procedurally defaulted under state law. Under these circumstances, there is no bar under the exhaustion or default doctrines to this Court's consideration of Petitioner's claim.

Petitioner makes several allegations of ineffective assistance of his appellate counsel Mr. James Montgomery. He argues that counsel's brief was inadequate because "he had prior knowledge of the existing issues and chose not to raise them." (Pet. at 84.) He further asserts that appellate counsel failed to raise "the issues of there being conflicting situations," "the need for inquiries," and "errors of law that were committed by trial counsel in regards to various illegalities." (Id.)

The Supreme Court has made clear that cause is measured by a stringent standard. See Coleman, 501 U.S. at 753-54 (explaining that "cause under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him"; "attorney ignorance or inadvertence is not 'cause' because the attorney is petitioner's agent when acting, or failing to act, in furtherance of the litigation"). "[N]ot just any deficiency in counsel's performance will do . . . ; the assistance must have been so ineffective as to violate the Federal Constitution." Edwards, 529 U.S. at 451. The determination of whether cause exists "does not turn on whether counsel erred or on the kind of error counsel may have made." Carrier, 477 U.S. at 488. To be sure, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." Id. at 487 (describing this proposition as the "unmistakable thrust" of the Court's previous decision in Engle v. Issac, 456 U.S. 107 (1982)). The Supreme Court has advised that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to

comply with the State's procedural rule."  Id. at 488.

To show that his counsel's performance violated his constitutional right to counsel, a petitioner must show that (1) his counsel's performance was deficient, and that (2) counsel's deficient performance prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  To establish prejudice, a petitioner must show that but for counsel's deficient performance, the result of the proceeding would have been different.  Williams v. Taylor, 529 U.S. 362, 390-91 (2000).

In Petitioner's case, his appellate counsel's performance was not deficient such as to violate the Constitution or constitute cause for procedural default.  Petitioner points to claims that he believes counsel should have asserted on direct appeal and argues that counsel "had prior knowledge of the existing issues and chose not to raise them."  (Pet. at 84.)  But the Constitution "does not insure that defense counsel will recognize and raise every conceivable constitutional claim."  Engle, 456 U.S. at 134; see also Carrier, 477 U.S. at 488.  It does not suffice "for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument."  Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994); see also McKee v. United States, 167 F.3d 103, 106 (2d Cir. 1999).  Thus Petitioner does not show a constitutional violation simply by arguing that counsel did not raise the host of claims that Petitioner now complains he should have raised.

After all, effective appellate advocacy involves "winnowing out weaker arguments" and focusing on the most promising issues.  Jones v. Barnes, 463 U.S. 745, 751-54 (1983); Engle, 456 U.S. at 133-34 ("Every trial presents a myriad of possible claims.  Counsel might have overlooked or chose to omit [some arguments] while pursuing other avenues of defense.") Petitioner's counsel appears to have done just that:  he raised several promising claims on direct appeal challenging Petitioner's arrest, the admission of evidence derived from the arrest, the

voluntariness of Petitioner's guilty plea, the legality of pleading to first-degree manslaughter as a lesser included offense of felony murder, and the trial court's denial of Petitioner's motion to vacate his plea without an evidentiary hearing.  Each of these issues was well researched, clearly presented, and carefully tailored to the facts of Petitioner's case.

Petitioner's other arguments also fail to show deficiency of his counsel's performance. He argues that counsel should have cited federal case law in his brief to better preserve Petitioner's rights.  (Pet. at 84.)  That practice, however, does not constitute ineffective assistance of counsel.  Franza v. Stinson, 58 F. Supp. 2d 124, 142 (S.D.N.Y. 1999); Grey v. Henderson, 788 F. Supp. 683 (E.D.N.Y. 1991).  Nor does it rise to the level of deficiency to fail to inform Petitioner that he could file a pro se supplemental brief.  On this record, Petitioner has not shown deficiency of his counsel's performance or any prejudice to his defense under the Strickland standard.

Since Petitioner's representation on appeal passes constitutional muster, Petitioner cannot establish cause for the default of the claims raised in his state post-conviction motions and the new claims raised in the instant motion.  Even if Petitioner's counsel were responsible for failing to raise these claims on direct appeal and thus leading to their default, "[s]o long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in Strickland v. Washington," there is "no inequity in requiring him to bear the risk of attorney error that results in a procedural default."  Carrier, 477 U.S. at 488. Moreover, Petitioner has not shown "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," id. at 488, such as "a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that "some interference by officials made compliance impracticable."  Id. (citations omitted).  Nor has

Petitioner made any showing of prejudice as a result of the default as required to excuse

procedural default. Accordingly, Petitioner's remaining claims are defaulted and cannot provide

grounds for habeas relief. Even if they were not defaulted, however, each of the claims would

fail on the merits, as addressed below.

### C. Merits Review of Petitioner's Procedurally Defaulted § 440 Claims

#### 1. Breach of plea agreement and failure to follow procedure

Petitioner raises a defaulted challenge to his sentence on the grounds that he should have

been allowed to withdraw his plea because the trial court "did not honor the plea agreement" at

sentencing when it imposed a mandatory surcharge and victim fees that were not included in the

plea agreement's terms (Pet. at 78), that his pre-sentence report was not provided to him prior to

sentencing so he could correct inaccuracies (id. at 77, 82), and that he did not receive notice that

a member of the victim's family would make a statement at his sentencing (id. at 77). Petitioner

renews these claims from his September 1998 motion to vacate his sentence (Resp't Answer

Opposing Pet., App., Ex. H), but notably failed to raise them at sentencing.

Petitioner's argument that the trial court breached the plea agreement does not have

merit. This claim is presumably grounded in a contract theory of plea bargaining. It is

cognizable under the AEDPA insofar as Petitioner argues that his plea was not knowing and

voluntary because it was induced by a promise of the prosecutor that was not fulfilled. "[W]hen

a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can

be said to be part of the inducement or consideration, such promise must be fulfilled."

Santobello v. New York, 404 U.S. 257, 262 (1971). Here, however, Petitioner received the

benefit of his bargain. In fact, he received a minimum of eleven years' imprisonment, the most

lenient sentence possible within the range of sentences (11 to 22 years) he was promised at his

plea allocution. The surcharge and victims' fees are mandatory under New York Criminal

Procedure Law § 60.35 and therefore could not have been subject to negotiation in the plea

agreement. Nor was Petitioner's plea induced by any promise that the surcharge or fees would

be waived. The trial court denied Petitioner's request for a waiver (Sentencing Hr'g Tr. at 11),

as was within the court's discretion under section 420.35 of the New York Criminal Procedure

Law. Thus, Petitioner cannot obtain relief based on his claim that the trial court imposed

"harsher sentences" than those promised. (Pet. at 78.)

Petitioner also argues reiterates the arguments raised on his motion to vacate sentence

that he did not timely receive his pre-sentence report or notice of victim statements. These

challenges are without merit. Regardless of these procedural deficiencies, the trial court imposed

a sentence that conformed to the terms set at Petitioner's plea hearing. Having suffered no harm,

Petitioner fails to show how his sentence is in violation of the Constitution, laws or treaties of the

United States as required for this Court to have power to issue a writ under the AEDPA. See 28

U.S.C. § 2244(a).

## 2. Challenges to the Grand Jury Proceedings

Petitioner challenges his grand jury proceedings on several grounds that he previously

raised in his September 1998 motion to vacate judgment. He argues that a ballistics report was

improperly admitted as inadmissible hearsay because it was not signed by the officer who

conducted the ballistics test (Pet. at 53), that evidence before the grand jury was insufficient to

support his indictment on the robbery charges since there was no evidence presented that the gun

used in the robbery was operable (id. at 57-58), and that the police testimony was improperly

offered to bolster an identification witness's testimony before the grand jury (id. at 58).

These grand jury claims are procedurally barred because Petitioner failed to raise them on

direct appeal. In denying Petitioner's motion to vacate, the state court rejected these grand jury

claims based on New York Criminal Procedure Law § 440.10(2)(c), which requires a state court

to deny a motion to vacate a judgment based on a constitutional violation where the

defendant unjustifiably failed to argue the constitutional violation on direct appeal despite a

sufficient record. N.Y. Crim. Proc. Law § 440.10(2)(c) (Consol. 2008). When a "petitioner

failed to exhaust state remedies and the court to which the petitioner would be required to present

his claims in order to meet the exhaustion requirement would now find the claims procedurally

barred," federal habeas courts also must deem the claim procedurally defaulted. Coleman v.

Thompson, 501 U.S. 722, 735 n.1 (1991); Harris v. Reed, 489 U.S. 255, 262 (1989) (stating that

the "adequate and independent state ground doctrine applies on federal habeas," such that "an

adequate and independent finding of procedural default will bar federal habeas review of the

federal claim, unless the habeas petitioner can show cause for the default and prejudice

attributable thereto, or demonstrate that failure to consider the federal claim will result in a

fundamental miscarriage of justice"); Sweet v. Bennett, 353 F.3d 135, 140 (2d Cir. 2003).

Petitioner's grand jury claims are subject to such procedural default.

     Moreover, by pleading guilty voluntarily and intelligently, Petitioner waived raising

claims of constitutional violations that are antecedent to the guilty plea. See Tollett v.

Henderson, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in

open court that he is in fact guilty of the offense with which he is charged, he may not thereafter

raise independent claims relating to the deprivation of constitutional rights that occurred prior to

the entry of the guilty plea."); United States v. Garcia, 339 F.3d 116, 117 (2d Cir. 2003) (per

curiam) ("It is well settled that a defendant who knowingly and voluntarily enters a guilty plea

waives all non-jurisdictional defects in the prior proceedings."). Because Petitioner's voluntary

and intelligent guilty plea "validly removes the issue of factual guilt from the case" and provides "a sufficient basis for the State's imposition of punishment," it therefore "simply renders irrelevant" any constitutional challenges to the admissibility or sufficiency of the evidence presented to the grand jury. <u>Menna v. New York</u>, 423 U.S. 61, 63 n.2 (1975).

In any event, even if Petitioner's grand jury claims were cognizable on habeas review, they would be denied on merits. The ballistics report introduced into evidence before the grand jury met the standard of admissibility under New York law and sufficiently established the operability element of the gun possession charge.[5] Under CPL 190.30(2), a ballistics report qualifies for the statutory hearsay exception in the context of Grand Jury proceedings if it is evident that (1) the person certifying the report was the same person who had conducted the testing, and (2) the report had been made by the same person who certified the report. N.Y. Crim. Proc. Law § 190.30(2); <u>People v. Rodriguez</u>, 235 A.D.2d 504, 506 (N.Y. App. Div. 1997). In this case, it is clear that the same officer who tested the operability of the firearm also made the report and signed the certification at the bottom of the report. The report indicated that the subject firearm was "tested by the undersigned" officer who certified the report. And "one may logically infer that he made the report based upon the fact that he both tested the firearm and signed the certification at the bottom of the report." <u>Rodriguez</u>, 235 A.D.2d at 506.

Based on this ballistics report, there was sufficient evidence to support an indictment of Petitioner on the gun possession charge,[6] specifically with respect to the element of operability. A ballistics report is competent evidence of the operability of the firearm, and in fact, "proof of

---

[5] Petitioner's reliance on the more rigorous standard for admissibility in <u>In the Matter of Rodney J.</u>, 633 N.E.2d 1089 (N.Y. 1994), is misplaced because that standard applies only to the prosecution of juveniles in Family Court.
[6] To the extent that Petitioner presses his operability argument with respect to his conviction for armed robbery, the argument is misplaced. Under New York law, inoperability of a firearm is an affirmative defense to robbery in the first degree, but it is not an element which must be proved beyond a reasonable doubt to support a conviction. <u>See</u> N.Y. Penal Law § 160.15 (Consol. 2008); <u>see also</u> <u>People v. Clark</u>, 363 N.E.2d 319, 322 (N.Y. 1977) (upholding the constitutionality of § 160.15).

operability is most commonly, and conveniently, established through the introduction of a ballistics report." People v. Harvin, 126 Misc. 2d 775, 778 (N.Y. Crim. Ct. 1984). Since the ballistics report proved that the gun in Petitioner's possession was operable, his claim that his indictment was not supported by sufficient evidence does not warrant habeas relief.

Nor can Petitioner obtain relief based on his argument that the court improperly admitted testimony of Detective Hicks and Officer McGhee that had the effect of "bolstering" Taveras's identification before the grand jury. The New York rule against "bolstering" identifications is derived from People v. Trowbridge, 113 N.E. 2d 841 (N.Y. Ct. App. 1953), which holds that it is error to permit an identification made by one witness to be corroborated by the testimony of another witness who merely testifies that the identification did occur. However, "[v]iolation of that rule, as is so with regard to many such state court rules, does not rise to a constitutional level." Snow v. Reid, 619 F. Supp. 579, 582 (S.D.N.Y. 1985); accord Diaz v. Greiner, 110 F.Supp.2d 225, 234 (S.D.N.Y. 2000) ("Bolstering claims have been (expressly) held not to be cognizable on federal habeas review." (citing Styles v. Zandt, No. 94 Civ. 1863, 1995 WL 326445, at *5 (S.D.N.Y. May 31, 1995) (stating that "a claim of improper 'bolstering' is not a cognizable basis of federal habeas relief")); Malik v. Khoenan, No. 94 Civ. 8084, 1996 WL 137478, at *4 (S.D.N.Y. Mar. 26, 1996) ("[A] claim of bolstering is not a federal constitutional claim cognizable on habeas review"); Vega v. Berry, No. 90 Civ. 7044, 1991 WL 73847, at *2 (S.D.N.Y. Apr. 29, 1991) ("[A]lthough bolstering is a practice prohibited in various states, including New York, the practice is not forbidden by the Federal Rules of Evidence and is not sufficiently prejudicial to deprive a defendant of his due process right to a fair trial."). Considering that the alleged bolstering occurred during the grand jury proceedings and not during a trial, Petitioner's claim falls even shorter of stating a constitutional claim that his right

to a fair trial was violated.

Moreover, even if Petitioner had preserved this issue on direct appeal, the state appellate court would not have reversed his conviction because improper bolstering at trial, let alone before the grand jury, does not constitute reversible error. People v. Sosa, 179 A.D.2d 544 (N.Y. App. Div. 1992); People v. Burgess, 66 A.D.2d 667 (N.Y. App. Div. 1978) ("While court and counsel should be careful to guard against impermissible bolstering, bolstering standing alone will rarely constitute reversible error except where there is a reasonable danger that the jury may take an officer's testimony, that an eyewitness victim identified the perpetrator, as a substitute for identification by the eyewitness victim . . . .").

### D. Merits Review of Petitioner's Additional Procedurally Defaulted Claims

Petitioner raises several new evidentiary and procedural issues in his habeas petition that have not been previously raised either on direct appeal or in his § 440 motions:[7] (1) the prosecutor failed to present exculpatory material to the grand jury (Pet. at 58); (2) the disclosure of Rosario material on the eve of trial constituted prosecutorial misconduct (id. at 62); (3) emergency room physicians were responsible for the death of Terrence Campbell (id. at 54-57); (4) the trial court abused its discretion in joining Petitioner's trial with that of Rodriguez (id. at 74); (5) the trial court erred in its pretrial Sandoval decision (id. at 51); (6) the prosecutor never responded to his request to be subjected to brain fingerprinting, polygraph and DNA testing; (7) Justice Bradley was biased against him; and (8) his trial counsel rendered ineffective assistance. Even if these claims were not defaulted, they would fail on the merits, as discussed below.

### 1. Prosecutorial Misconduct Allegations

Petitioner asserts a defaulted claim of prosecutorial misconduct. He claims that the

---

[7] Petitioner did raise some of these claims in his writ of coram nobis. Raising these issues on coram nobis, however, does not exhaust them. Jones v. Senkowski, 42 Fed. Appx. 485, 487 (2d Cir. 2002).

failure of the prosecutor to reveal the prior inconsistent statements of three witnesses and the fact

that two witnesses were cooperating constituted prosecutorial misconduct because it "misled the

Grand Juries to such an extent as to impair their basic function."  (Pet. at 58.)  In addition to

being procedurally defaulted, Petitioner's claim of prosecutorial misconduct during the grand

jury proceedings is waived because of Petitioner's guilty plea.  See Tollett v. Henderson, 411

U.S. 258, 267 (1973) United States v. Garcia, 339 F.3d 116, 117 (2d Cir. 2003).

Even if this claim was reviewable, it would fail on the merits.  Petitioner's claim of

prosecutorial misconduct by failing to inform the Grand Jury of inconsistent statements of

witnesses is based on the prosecutor's alleged failure to fulfill an obligation that does not exist

under the Constitution and cannot be imposed pursuant to the courts' supervisory judicial

authority.  United States v. Williams, 504 U.S. 36, 46-47 (1992).  As the United States Supreme

Court has made clear, the purpose of the grand jury is "to assess whether there is an adequate

basis for bringing a criminal charge," and "[t]o make that assessment it has always been thought

sufficient to hear only the prosecutor's side."  Id. at 51; see also Charleston v. Senkowski, No. 92

Civ. 6639, 1994 U.S. Dist. LEXIS 15896, at *23 (S.D.N.Y. 1994).

## 2.  Discovery Claims

Petitioner also claims that the prosecutor committed misconduct by disclosing

voluminous amounts of Rosario material on the eve of trial which "served to impair the

opportunity of defense counsels' use" of such materials.  (Id. at 62.)  This allegation is not

subject to habeas review because "Rosario is not based on the State or Federal Constitution."

People v. Jackson, 585 N.E.2d 795, 799 (N.Y. Ct. App. 1991) (discussing People v. Rosario, 173

N.E.2d 881 (N.Y. Ct. App. 1961)); see also Moe v. Walker, No. 97 Civ. 4702, 1999 U.S. Dist.

LEXIS 1099, at *11 (S.D.N.Y. Feb. 5, 1999) ("[F]ederal courts have consistently held that

<u>Rosario</u> claims are not subject to federal habeas corpus review because they arise exclusively under state law."); <u>Cruz v. Scully</u>, 716 F. Supp. 766 (S.D.N.Y. 1989). Thus, Petitioner's claim is not reviewable by this Court.

In any event, Petitioner's <u>Rosario</u> claim is without merit. The <u>Rosario</u> decision, presently codified at New York Criminal Procedure Law § 240.45(1)(a), imposes a definite duty upon the prosecution to turn over pretrial statements of prosecution witnesses that relate to the subject matter of the witnesses' testimony. <u>Rosario</u>, 173 N.E.2d 881. That duty is satisfied so long as the disclosure is made "[a]fter the jury has been sworn and before the prosecutor's opening address." N.Y. Crim. Proc. Law § 240.45(1). Petitioner's <u>Rosario</u> claim therefore fails because the prosecutor was not required to disclose the materials prior to his opening statement.

Even if Petitioner's <u>Rosario</u> claim is cast alongside his broader discovery complaints (<u>see</u> Pet. at 58-62), none of his discovery claims warrants relief under the AEDPA. Under federal law, "there is no general constitutional right to discovery in a criminal case, and <u>Brady</u>, which addressed only exculpatory evidence, did not create one." <u>Gray v. Netherland</u>, 518 U.S. 152, 168 (1996) (internal quotations omitted) (citing <u>Weatherford v. Bursey</u>, 429 U.S. 545 (1977)). The Due Process Clause has "little to say regarding the amount of discovery which the parties must be afforded." <u>Id.</u> (citing <u>Wardius v. Oregon</u>, 412 U.S. 470, 474 (1973)). Thus, Petitioner has no federal claim with respect to police files that were not disclosed by the prosecutor.

### 3. Causation Claim

Petitioner claims that it was the emergency room physicians who caused Terrence Campbell's death, rather than he or his codefendant Rodriguez, when they withdrew Campbell's life support. (Pet. at 54-57.) He argues that "the pronouncement of [Campbell's] death was premature due to the gross negligence or intentional wrongdoing of doctors," and "the

intervening medical practice procedure therefore interrupted the chain of causation and became the legal cause of death."  (Id. at 55 (citing People v. Eulo, 472 N.E.2d 286, 297 (N.Y. Ct. App. 1984).)  Petitioner's causation argument can be construed as challenging the sufficiency of the evidence.[8]

This claim fails on the merits as there was more than enough evidence that Petitioner and his codefendant's intentional shooting of Campbell was the legal cause of his death.  Under New York state common law, "[i]f a felonious assault is operative as a cause of death, the causal co-operation of erroneous surgical or medical treatment does not relieve the assailant from liability for the homicide.  It is only where the death is solely attributable to the secondary agency, and not at all induced by the primary one, that its intervention constitutes a defense."  People v. Kane, 107 N.E. 655, 657 (N.Y. 1915); reaffirmed by People v. Stewart, 358 N.E.2d 487 (N.Y. 1976); Matter of Anthony M., 471 N.E.2d 447 (N.Y. 1984).  This rule is not changed by People v. Eulo, 472 N.E.2d 286 (N.Y. 1984), decided the same day as Matter of Anthony M., and on which Petitioner relies.  See People v. Griffin, 173 A.D.2d 120, 122-23 (N.Y. App. Div. 1991) (stating that Eulo did not change the Kane rule but rather found "an intervening act as the superseding cause of death" where "the act could be said to be the sole cause of death").  Here, the physicians treating the shooting victim, Mr. Campbell, did not commit gross negligence by not conducting the various tests Petitioner insists they should have conducted before pronouncing the death of Mr. Campbell.  Moreover, even if there was some degree of negligence involved, it was certainly not the "sole cause of death."  Petitioner and his codefendant

---

[8] Alternatively, Petitioner may be asserting this claim to excuse his procedural default of his claims under the "fundamental miscarriage of justice" exception by demonstrating that he is factually innocent of the crime for which he was convicted.  See Harris, 489 U.S. at 262.  The fundamental miscarriage of justice exception is "extremely rare" and should be applied only in "the extraordinary cases."  Schlup v. Delo, 513 U.S. 298, 321-22 (1995). In this case, Petitioner's causation argument is not at all persuasive of Petitioner's actual innocence.

Rodriguez "inflict[ed] a wound with a deadly weapon in such manner as to put life in jeopardy," and since Campbell's death followed as a consequence, "it does not alter its nature or diminish its criminality to prove that other causes cooperated in producing the fatal result." Kane, 107 N.E. at 659. Petitioner thus fails with this argument to establish a basis for habeas relief.

### 4. Improper Joinder Claim

Petitioner raises the procedurally defaulted claim that the trial court abused its discretion in joining Petitioner's trial with that of his codefendant Rodriguez. This argument fails to assert a violation of federal law because improper joinder alone does not amount to a constitutional violation. "[M]isjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." United States v. Lane, 474 U.S. 438, 446 n.8 (1986). Here, since Petitioner never went to trial, any claim of improper joinder is unwarranted speculation and cannot serve as grounds for habeas relief.

### 5. Challenge to the Trial Court's Sandoval Decision

Petitioner also raises the procedurally defaulted challenge to the trial court's pretrial Sandoval decision, which set forth what aspects of Petitioner's criminal history the prosecutor could use to impeach Petitioner's credibility should he testify at trial. (Pet. at 51.) Specifically, Petitioner claims that the trial court erred by allowing the People to inquire as to the underlying acts of conviction, for two of which he received youthful offender treatment. (Id.)

Petitioner has no basis for this claim because by pleading guilty voluntarily and intelligently, he "waived any right to challenge any evidence the [prosecution] may have used against him had he gone to trial." Tang Xue Dan v. United States, 2001 U.S. Dist. LEXIS 2440 (S.D.N.Y. 2001); see also Haring v. Prosise, 462 U.S. 306, 319 (U.S. 1983) (stating that "an

intelligent and voluntary plea of guilty generally bars habeas review of claims relating to the deprivation of constitutional rights that occurred before the defendant pleaded guilty" (citing Tollett, 411 U.S. at 266)).

Nevertheless, Petitioner's claim fails on the merits because he cannot show that the trial court's Sandoval decision amounted to an erroneous use of its "inherent power to control the scope of cross-examination and the use of prior bad acts." People v. Gray, 646 N.E.2d 444, 445 (N.Y. 1995) (quoting People v Walker, 633 N.E.2d 472, 474 (N.Y. 1994)). The decision to allow use of prior criminal convictions and bad acts to impeach a testifying defendant "is largely, if not completely, a matter of discretion which rests with the trial courts and fact-reviewing intermediate appellate courts." People v. Shields, 386 N.E.2d 257, 258 (N.Y. 1978). While it is impermissible to use youthful offender adjudications as impeachment weapons as they "are not convictions of a crime" under New York law, the prosecution may bring out on cross-examination "the illegal or immoral acts underlying such adjudications." Gray, 646 N.E.2d at 445 (citing People v. Greer, 366 N.E.2d 273, 277 (N.Y. 1977)). With respect to limiting the scope of cross-examination and the use of prior bad acts, there are "no per se rules requiring preclusion because of the age, nature and number of a defendant's prior crimes." People v. Walker, 633 N.E.2d at 474. Here, the trial court was within its discretion to allow the prosecution to inquire on cross-examination about the acts underlying Petitioner's youthful offender adjudications. And as Petitioner never went to trial, he cannot claim that the court in fact abused its discretion in limiting such cross-examination.

### 6. Brain Fingerprinting, Polygraph, and DNA Testing Claim

Petitioner also asserts the procedurally defaulted claim that he should have been subjected to brain fingerprinting, polygraph, and DNA testing, as he was "a prime candidate" for

such testing.  (Pet. at 64-69).

Petitioner's claim may be construed as alleging a violation of his Sixth Amendment right to present a defense or his due process right not to be deprived of his liberty, but no such constitutional rights have been held to exist.  The Supreme Court has held that the "exclusion of evidence [is] unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused."  United States v. Scheffer, 523 U.S. 303, 308 (1998).  Applying this standard, the Court upheld the exclusion of polygraph testing, noting its debatable reliability, because excluding its use to bolster the defendant's credibility does not significantly impair the defendant's defense.  Id. at 317.  Nor is there any case law supporting a constitutional right to brain fingerprinting.  Thus, Petitioner cannot complain that he his request for polygraph testing, or other similarly unreliable evidence such as brain fingerprinting, was denied.

With respect to DNA testing, it is an unsettled question whether there is a federal constitutional right to DNA testing of biological evidence already in the state's possession such that procedural and substantive due process would apply to its deprivation.  McKithen v. Brown, 481 F.3d 89, 106 (2d Cir. 2007) (remanding the issue to the district court), cert. denied, 2008 WL 423551 (Feb. 19, 2008) (No. 07-350).  As there is no clear constitutional basis for Petitioner's claim, a writ of habeas corpus shall not issue based on this claim.  Nor may this Court grant relief based on the denial of a right to DNA testing under New York Criminal Procedure Law § 440.30(1-a), because a state law claim is not subject to habeas review.  See 28 U.S.C. § 2254(a).

### 7.  Judicial Bias Claim

Petitioner also seeks habeas relief based on the procedurally defaulted claim that Justice Bradley was biased against him thereby depriving him of his constitutional right to fair proceedings.  (Pet. at 74-79.)  Even if this claim were not procedurally defaulted, it would fail on

the merits.

To prevail on a claim of judicial bias, Petitioner must show that he was denied the "right to be tried by an unbiased and impartial judge without a direct personal interest in the outcome of the hearing." Ungar v. Sarafite, 376 U.S. 575, 584 (1964) (citing Tumey v. Ohio, 273 U.S. 510 (1927) (holding that a defendant convicted before the mayor of the village, who received portion of fine collected, was denied due process under the Fourteenth Amendment, in view of the mayor's representation of village)). Petitioner makes no showing that Justice Bradley had a personal stake in the outcome of his proceedings, and his allegations of bias are not persuasive. For example, to demonstrate the alleged bias of Justice Bradley, Petitioner asserts that he was excluded from sidebar conferences. (Pet. at 74). Not only does this example fail to show bias, but there is nothing improper or unconstitutional about excluding a defendant from sidebar conferences. Gaiter v. Lord, 917 F. Supp. 145, 152 (E.D.N.Y. 1996) ("The Federal Constitution does not require a defendant's presence at sidebar conferences.").

Petitioner's other complaints against Justice Bradley also fail to demonstrate judicial bias. He asserts that the judge demonstrated his bias when he allowed the joinder of Petitioner's case with that of his codefendant Rodriguez (Pet. at 74); agreed to the consolidation of the indictments (id. at 76); decline to hold a hearing on his plea withdrawal motion (id. at 77), did not advise Petitioner that he could ask the judge to recuse himself (id. at 76), did not recuse himself sua sponte (id. at 76), did not provide Petitioner with a copy of his presentence report (id. at 77); did not notify him that his victim's family would make a statement at his sentencing (id. at 78); and did not waive mandatory surcharges (id. at 78). Rather than demonstrate bias, most of these complaints merely show dissatisfaction with the court's rulings that were adverse to Petitioner. Such complaints do not present a valid bias claim. See Liteky v. United States, 510

42

U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion.").  The complaints regarding the judge's failure to recuse himself or inform Petitioner of his ability to request recusal are plainly insufficient to allege judicial bias.

Finally, the Court is not persuaded by Petitioner's argument that comments made by Justice Bradley during sentencing demonstrate judicial bias.  In his petition, Petitioner objects to Justice Bradley's remark that Petitioner was being sentenced "not just in the case of killing Terrence Campbell."  (Pet. at 76.)  No bias can be interpreted from this remark which merely stated the truth, as Petitioner was being sentenced for three additional crimes.  Petitioner also points to the judge's comment during sentencing that "people such as yourself and Mr. Rodriguez . . . preyed on innocent people" who "use the bridge" making "it impossible for decent people to live in this city."  (Id. at 78.)  While Petitioner construes this comment to suggest he was being sentenced for crimes he did not commit (id. at 78) and to show that Justice Bradley was biased against Hispanics (id. at 76), these comments can only be reasonably interpreted as words of censure at the time of sentencing.  Moreover, Petitioner was sentenced for the crimes he admitted committing and to prison terms he negotiated and accepted as part of his plea bargain.  His complaints against Justice Bradley therefore merit no relief.

### 8. Ineffective Assistance of Trial Counsel Claim

Petitioner seeks habeas relief based on his claims that his trial counsel rendered ineffective assistance.  According to Petitioner, his trial counsel gave ineffective assistance by pressuring Petitioner to plead guilty with grim predictions of the disadvantages of trial (Pet. at 79, 80), by causing Petitioner thus to perjure himself when he entered his plea (id. at 80), and by withdrawing from representation before taking "steps to the extent reasonably practicable to avoid foreseeable prejudice to his rights" (id. at 81).  He also argues that his replacement trial

43

counsel's motion to vacate Petitioner's plea was inadequate because counsel failed to conduct both legal and factual research before submitting it.  (Id. at 81.)

Petitioner could conceivably raise these claims in state court in a § 440.10 motion, since they appear to raise issues that are not fully developed on the record.  See, e.g., People v. Hansen, 29 A.D.3d 490 (N.Y. App. Div. 2006).  Considering this possibility, it is not clear that this claim would be procedurally barred in state court.  Although this claim is therefore not constructively exhausted, the Court may still review it on the merits notwithstanding Petitioner's failure to exhaust state remedies.  28 U.S.C. § 2254(b)(2).

To establish a claim of ineffective assistance of counsel, Petitioner must meet the requirements of Strickland v. Washington, 466 U.S. 668 (1984).  He must show that (1) his counsel's performance was deficient, and that (2) counsel's deficient performance prejudiced the defense.  Id. at 687.  "A court must indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance."  Id. at 689.

Petitioner's claim that his trial lawyers' performance was deficient fails under Strickland. It was well within the reasonable range of professional assistance for Petitioner's trial lawyer to discourage him from going to trial, particularly when there was substantial evidence of Petitioner's guilt and foreseeable disadvantages to a jury trial, including the media attention to the case and sympathy for the homicide victim.  Petitioner's claim that his trial lawyer forced him to commit perjury is baseless because his trial lawyer properly concluded that Petitioner pleaded guilty voluntarily and not as a result of any "pressure" exerted by him.  Petitioner's claim that his trial lawyers violated their professional obligation to take adequate precautions to avoid foreseeable prejudice to Petitioner's rights is also unfounded.  Petitioner neither alleges that his files were transferred in an untimely manner nor that there was delay in appointing

substitute counsel.  Moreover, he fails to make any showing of prejudice as a result of his lawyers' conduct.

Petitioner's claim with respect to his replacement counsel's representation also fails on the merits.  Petitioner does not explain how any further legal research in support of his motion to withdraw his plea would have changed the outcome on his motion.  Nor does he explain how the failure to conduct factual research was deficient.  If anything, Petitioner was in the best position to obtain evidence to support his allegations that his lawyer coerced him to plead guilty, a step which he failed to take in pursuing his motion.  As Petitioner has shown neither deficiency nor prejudice with respect to these claims, they are denied on the merits.

### E.  Petitioner's "Jail Time" Claim in His Amended Petition

Finally, by his application signed February 1, 2007, Petitioner amends his § 2254 petition with the additional claim that his due process and equal protection rights are violated by the Department of Corrections' failure to give him credit for seventy-five days of "jail time" in connection with his December 14, 1994 conviction.[9]  This new claim, however, is barred by the AEDPA's statute of limitations.

When Petitioner signed his initial § 2254 petition on November 7, 2001, this Court determined that 342 days of the statutory period had passed and thus held that Petitioner's § 2254 petition was not barred by the AEDPA's one-year statute of limitations.  Lebron v. Sanders, No. 02 Civ. 6327, 2004 U.S. Dist. LEXIS 2891, *16 (S.D.N.Y. Feb. 25, 2004) ("Because the Petitioner signed this petition for federal habeas corpus relief on November 7, 2001, only 342

---

[9] Petitioner previously raised this claim for credit for additional time served in an Article 78 proceeding against the New York Department of Correction in state court.  On April 14, 2005, the First Department denied the claim on the merits as barred by res judicata.  Lebron v. Smith, 17 A.D.3d 195 (N.Y. App. Div. 2005).  On May 29, 2007, the First Department again rejected Petitioner's claim for additional jail-time credit as barred by res judicata.  Matter of Lebron v. Smith, 40 A.D.3d 515 (N.Y. App. Div. 2007).

days of the statutory period had passed, and Petitioner filed within the one-year statute of limitations.")  Petitioner raised his jail-time computation claim, however, more than 85 days after his November 7, 2001 petition.  The jail-time computation claim is therefore subject to the one-year statute of limitations.

Nevertheless, since amended federal habeas petitions are governed by the Federal Rules of Civil Procedure, see 28 U.S.C. § 2242, Petitioner's amended petition may circumvent the one-year statute of limitations if it "relates back to the date of the original pleading," as provided under Federal Rule of Civil Procedure 15(c)(2).  Fed. Rule Civ. Proc. 15(c)(2) ("An amendment of a pleading relates back to the date of the original pleading when . . . the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."); Mayle v. Felix, 545 U.S. 644, 649 (2005) (applying Rule 15(c)(2) to an amended habeas petition).  But, as held by the Supreme Court, "[a]n amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."  Mayle, 545 U.S. at 650.

Petitioner's jail-time computation claim does not relate back to his original habeas petition because none of the facts supporting the claim were set forth in the original pleading. Petitioner's original petition challenges only the validity of his conviction and makes no mention of the Department of Corrections' computation of his sentence or Petitioner's time served.  By letter endorsement signed on May 16, 2007, this Court denied Petitioner's application to amend his petition to include his jail-time computation claim on this very ground—i.e., that the additional claim was not related to Petitioner's habeas corpus petition.  (Endorsed Letter addressed to Judge Patterson from Elvin Lebron dated 4/23/07, signed by Judge Patterson on

5/16/07, Doc. No. 103). On July 26, 2007, this Court denied reconsideration of that ruling on the same grounds. (Endorsed Letter addressed to Judge Patterson from Elvin Lebron signed by Judge Patterson on 7/17/07, Doc. No. 121). Now that Petitioner's jail-time computation claim has come before this Court, it is denied as untimely under the AEDPA because it is not at all related, let alone "tied to a common core of operative facts," Mayle, 545 U.S. at 664, found in his original petition.

## CONCLUSION

For the reasons stated above, Petitioner's § 2254 amended petition is denied in its entirety. In addition, because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c)(2); Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-13 (2d Cir. 2000); Soto v. United States, 185 F.3d 48, 51-53 (2d Cir. 1997). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 445 (1962).

IT IS SO ORDERED.

Dated: New York, New York
March 25, 2008

Robert P. Patterson, Jr.
United States District Judge

Copies of this Opinion and Order Sent to:

Elvin Lebron
95 A 0121
Clinton C.F.
P.O. Box 2000

47

Institution Road
Dannemora, NY 12929

Robert M. Morgenthau
District Attorney of the County of New York
By:  Richard Nahas, ADA
One Hogan Place
New York, NY 10013
Tel:     212-335-9691
Fax:     212-335-9288